UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

MALA SHARMA,

Plaintiff,

*on behalf of herself and all others similarly situated,*

-against-

OPEN DOOR NY HOME CARE SERVICES, INC.,

Defendant.

Case No. 24-cv-00497 (DG-JAM)

**DEFENDANT'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION TO DISMISS**

Date:   April 4, 2024

Matthew R. Capobianco
Joseph A. Gusmano
LITTLER MENDELSON, P.C.
290 Broadhollow Road, Suite 305
Melville, New York 11747
(631) 247-4700
mcapobianco@littler.com
jgusmano@littler.com

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .......................................................................................................ii-viii

I.      PRELIMINARY STATEMENT ......................................................................................... 1

II.     STATEMENT OF RELEVANT FACTS............................................................................. 3

III.    LEGAL ARGUMENT......................................................................................................... 4

        A.      Plaintiff's FLSA Claims Fail As A Matter Of Law................................................. 4

                1.      The FLSA's "Prompt Payment" Requirement Obligates Employers
                        To Pay Wages On Its Own Regularly Established Pay Dates ................... 4

                2.      Open Door's Pay Practices Comply With The FLSA's "Prompt
                        Payment" Standard As A Matter of Law ..................................................... 6

                3.      Ms. Sharma Cannot Base Her FLSA "Prompt Payment" Claims On
                        The NYLL's Pay Frequency Requirements ................................................ 8

        B.      The Court Should Dismiss Ms. Sharma's Remaining Claims For Lack of
                Subject Matter Jurisdiction ................................................................................... 10

        C.      Alternatively, The Court Should Dismiss Ms. Sharma's Remaining NYLL
                Claims ..................................................................................................................... 12

                1.      The Court Should Dismiss Ms. Sharma's NYLL § 191 Claim ............... 12

                        a.      NYLL §191 Does Not Afford A Private Right of Action
                                For Untimely Paid Full Wages ..................................................... 12

                        b.      NYLL §§ 191 and 198 Do Not Expressly Provide for a
                                Private Right of Action for Untimely Paid Full Wages............... 13

                        c.      NYLL §§ 191 and 198 Also Do Not Provide for an Implied
                                Private Right of Action For Untimely Paid Full Wages.............. 22

                2.      The Court Should Also Dismiss Ms. Sharma's NYLL § 193(5)
                        Claim......................................................................................................... 24

IV.     CONCLUSION.................................................................................................................. 25

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Accosta v. Lorelei Events Group, Inc.*,
  No. 17-cv-7804, 2022 WL 195514 (S.D.N.Y. Jan. 21, 2022)............................................14, 15

*Adams v. City of New York*,
  No. 16-cv-3445, 2021 1791182 (S.D.N.Y. May 2, 2021) ........................................................5

*Altamura v. Reliance Commc'ns*,
  No. 16-cv-1964, 2023 WL 5843720 (E.D.N.Y. Sept. 11, 2023)..........................................2, 11

*Arbaugh v. Y&H Corp.*,
  546 U.S. 500 (2006)..............................................................................................................11

*Arciello v. Cnty. of Nassau*,
  No. 16-cv-3974, 2019 WL 4575145 (E.D.N.Y. Sept. 20, 2019)............................................17

*Arroyave v. Rossi*,
  296 F. App'x 835 (11th Cir. 2008)..........................................................................................7

*Avalos v. United States*,
  54 F.4th 1343 (Fed. Cir. 2022), *cert. denied sub nom. Martin v. United States*,
  144 S. Ct. 557 (2024)..............................................................................................................5

*Barrentine v. Arkansas-Best Freight Sys.*,
  450 U.S. 728 (1981)................................................................................................................8

*Basinger v. Wal-Mart Stores*,
  No. 98-cv-334, 1999 WL 33117106 (D. Me. Jan. 27, 1999)....................................................9

*Belizaire v. RAV Investigative & Sec. Servs.*,
  61 F. Supp. 3d 336 (S.D.N.Y. 2014) .....................................................................................18

*Beshty v. General Motors*,
  327 F. Supp. 2d 208 (W.D.N.Y. 2004), *aff'd*, 144 F. App'x 196 (2d Cir. 2005)....................25

*Boutsikakis v. Tri-Borough Home Care*,
  No. 15-cv-5833, 2023 WL 3620646 (E.D.N.Y. Apr. 11, 2023)..........................................3, 25

*Breland v. Zakarian*,
  No. 08-cv-6120 (S.D.N.Y. filed June 30, 2009) (Kaplan, J.) .....................................................8

*Brooklyn Savings Bank v. O'Neil*,
  324 U.S. 697 (1945)..............................................................................................................4, 9

*Chan v. Big Geyser, Inc.*,
  No. 17-cv-6473, 2018 WL 4168967 (S.D.N.Y. Aug. 30, 2018) .............................................22

*Chen v. Dunkin' Brands*,
  954 F.3d 492 (2d Cir. 2020) ...................................................................................................13

*Coley v. Vannguard Urban Improvement Ass'n*,
  No. 12-cv-5565, 2018 WL 1513628 (E.D.N.Y. Mar. 27, 2018) .............................................7

*Commisso v. PricewaterhouseCoopers*,
  No. 11-cv-5713, 2012 WL 3070217 (S.D.N.Y. July 27, 2012)...............................................10

*Conzo v. City of New York*,
  667 F. Supp. 2d 279 (S.D.N.Y. 2009) .....................................................................................7

*Corporan v. Regeneron Pharm.*,
  No. 21-cv-5069 (S.D.N.Y. Jan. 24, 2022) (Seibel, J.) ............................................................20

*United States ex rel Coyne v. Amgen*,
  229 F. Supp. 3d 159, 162 (E.D.N.Y. 2017), *report adopted*, 243 F. Supp. 3d
  295 (E.D.N.Y. 2017), *aff'd*, 717 F. App'x 26 (2d Cir. 2017) (E.D.N.Y. 2017) ......................3

*Cruz v TD Bank, N.A.*,
  22 N.Y.3d 61 (Ct. App. 2013) ................................................................................................23

*Cunningham v. Pret a Manager (USA)*,
  No. 19-cv-2322, 2020 WL 122835 (S.D.N.Y. Jan. 10, 2020).................................................10

*Espinal v. Sephora USA, Inc.*,
  No. 22-cv-3034, 2022 WL 16973328 (S.D.N.Y. Nov. 16, 2022) .....................................14, 15

*Galante v. Watermark Servs. IV*,
  No. 23-cv-6227, 2024 WL 989704 (W.D.N.Y. Mar. 7, 2024) ....................................2, 15, 17

*Garcia v. Skechers USA Retail*,
  No. 23-cv-1055, 2024 WL 1142316 (E.D.N.Y. Mar. 15, 2024) (Chen, J.)............................16

*Gardner v. D&D Elec. Constr. Co.*,
  No. 160249/2018, 2019 WL 3765345 (New York Cnty. Sup. Ct. Aug. 9,
  2019) ........................................................................................................................................17

*Georgiou v. Harmon Stores*,
  No. 22-cv-2861, 2023 WL 112805 (E.D.N.Y. Jan. 5, 2023)............................................19, 23

*Girolamo v. Cmty. Physical Therapy & Assocs.*,
  No. 15-cv-2361, 2016 WL 2909649 (N.D. Ill. May 19, 2016) ................................................9

*Gordon v. BlueTriton Brands*,
No. 22-cv-2138 (S.D.N.Y. Oct 20, 2022) (Furman, J.) ............................................................20

*Grant v. Global Aircraft Dispatch*,
204 N.Y.S.3d 117 (N.Y. App. Div. 2d Dep't Jan. 17, 2024) ............................................*passim*

*Gutierrez v. Carter's Inc.*,
No. 22-cv-3234, 2023 WL 7337184 (E.D.N.Y. Nov. 7, 2023) ...................................12, 14, 15

*Harris v. Old Navy, LLC*,
No. 21-cv-9946, 2022 WL 16941712 (S.D.N.Y. Nov. 15, 2022) .....................................14, 15

*Hunter v. Planned Bldg. Servs.*,
No. 715053/2017, 2018 WL 3392476 (Queens Cty. Sup. Ct. June 20, 2018) ........................18

*Hussain v. Pakistan Int'l Airlines Corp.*,
No. 11-cv-932, 2012 WL 5289541 (E.D.N.Y. Oct. 23, 2012) .................................................18

*Inclan v. New York Hospitality Group*,
95 F. Supp. 3d 490 (S.D.N.Y. 2015) ..........................................................................................5

*Jerome v. United States*,
318 U.S. 101 (1943)....................................................................................................................8

*Jiao v. Shang Shang Qian Inc.*,
No. 18-cv-5624, 2020 WL 5105063 (E.D.N.Y. Aug. 21, 2020) .............................................11

*Johnson v. U.S.*,
576 U.S. 591 (2015)..................................................................................................................18

*Kaplan v. Wings of Hope Residence*,
No. 18-cv-2972, 2020 WL 616630 (E.D.N.Y. Feb. 7, 2020)...................................................11

*Konkur v. Utica Academy of Science Charter School*,
38 N.Y.3d 38, 45 (2022)...........................................................................................................22

*Kuwait Airways Corp. v. Ogden Allied Aviation Servs.*,
726 F. Supp. 1389 (E.D.N.Y. 1989)..........................................................................................13

*Lincoln Prop. Co. v. Roche*,
546 U.S. 81 (2005)....................................................................................................................10

*Luther v. Z Wilson, Inc.*,
528 F. Supp. 1166 (S.D. Ohio 1981) ..........................................................................................6

*Makarova v. United States*,
201 F.3d 110 (2d Cir. 2000) .......................................................................................................3

*Marshall v. Allen-Russell Ford,*
    488 F. Supp. 615 (E.D. Tenn. 1980)..........................................................................................5

*Martin v. United States,*
    117 Fed. Cl. 611 (2014)..............................................................................................................5

*Mattera v. Clear Channel Commc'ns,*
    239 F.R.D. 70 (S.D.N.Y. 2006)..........................................................................................10, 11

*Mendez v. U.S. Nonwovens Corp.,*
    2 F. Supp. 3d 442 (E.D.N.Y. 2014)...........................................................................................5

*Mississippi Band of Choctaw Indians v. Holyfield,*
    490 U.S. 30 (1989)......................................................................................................................8

*Missouri Pac. R. Co. v. Tucker,*
    230 U.S. 340 (1913)..................................................................................................................20

*Missouri, Kansas & Texas R. Co. v. Ferris,*
    300 U.S. 227 (1900)..................................................................................................................25

*Nakahata v. New York Presybterian Healthcare Sys.,*
    723 F.3d 192 (2d Cir. 2013) .......................................................................................................7

*NAP v. Shuttletex,*
    112 F. Supp. 2d 369 (S.D.N.Y. 2000) .....................................................................................17

*National Credit Union Admin. v. First Nat'l Bank & Trust Co.,*
    522 U.S. 479 (1998)..................................................................................................................16

*NLRB v. Natural Gas Util. Dist. of Hawkins County,*
    403 U.S. 600 (1971)....................................................................................................................8

*North Carolina v. Rice,*
    404 U.S. 244 (1971)..................................................................................................................25

*Pozo v. BlueMercury, Inc.,*
    No. 22-cv-7382, 2023 WL 4980217 (S.D.N.Y. Aug. 3, 2023) ..........................................14, 15

*Quintanillia v. Kabo Pharm.,*
    No. 19-cv-6752 (E.D.N.Y. June 30, 2020) (CM/ECF Doc. 27, entered Nov. 9,
    2020)..........................................................................................................................................14

*Rigopoulus v. Kervan,*
    140 F.2d 506 (2d Cir. 1943) .......................................................................................................5

*Rogers v. City of Troy,*
    148 F.3d 52 (2d Cir. 1998) .....................................................................................................4, 9

*Shum v. Jili Inc.*,
No. No. 17-cv-7600, 2023 WL 2974902 (E.D.N.Y. Mar. 19, 2023) ......................................11

*Singh v. Mowla*,
No. 19-cv-4687, 2022 WL 17820099 (E.D.N.Y. Sept. 30, 2022)...........................................11

*St. Louis, I.M. & S. Ry. Co. v. Williams*,
241 U.S. 63 (1919)................................................................................................................20

*State v. Donald DD*,
24 N.Y.3d 174 (2014)...........................................................................................................18

*Sw. Tel. & Tel. Co. v. Danaher*,
238 U.S. 482 (1915)..............................................................................................................20

*Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123*,
321 U.S. 590 (1944)................................................................................................................8

*Tyler v. Hennepin Cnty., Minn.*,
143 S. Ct. 1369 (2023) (Gorsuch, J., concurring)..................................................................20

*U.S. v. Awadeallah*,
349 F.3d 42 (2d Cir. 2003) ...................................................................................................19

*U.S. v. Bajakajian*,
524 U.S. 321 (1998)..............................................................................................................20

*U.S. v. Cunningham*,
292 F.3d 115 (2d Cir. 2002) .................................................................................................16

*United States v. Alaska S.S. Co.*,
253 U.S. 113 (1920)..............................................................................................................25

*United States v. Kinghoffer Bros. Realty Corp.*,
285 F.2d 487 (2d Cir. 1960) ...................................................................................................4

*Urena v. Sonder USA*,
No. 22-cv-7736, 2024 WL 989593 (S.D.N.Y. Mar. 7, 2024) (Marrero, J.) ...........................16

*V.S. v. Muhammad*,
595 F.3d 426 (2d Cir. 2010) .................................................................................................24

*Vega v. CM & Associates Construction Management*,
107 N.Y.S.3d 286 (N.Y. App. Div. 1st Dep't 2019) .........................................................*passim*

*Volpe v. Am. Language Commc'n Center*,
200 F. Supp. 3d 428 (S.D.N. 2016), *aff'd*, 692 F. App'x 51 (2d Cir. 2017) ...........................11

*In re Wage Payment Litig.,*
759 A.2d 217 (Me. 2000) ...................................................................................................9, 13

*Wilson v. Jamaica Serv. Program for Older Adults,*
No. 21-cv-1263, 2021 WL 4750098 (E.D.N.Y. Oct. 12, 2021) .................................................7

*Yang v. Zhou's Yummy Rest.,*
No. 19-cv-5203, 2023 WL 2347885 (E.D.N.Y. Mar. 3, 2023) ................................................11

*Zimmerman v. Regal Cinemas,*
No. 22-cv-2851 (S.D.N.Y. Sept. 1, 2022) (Seibel, J.)..............................................................20

**Statutes**

28 U.S.C. §§ 1332(d)(2)(A), 1332(d)(4)(B) ...................................................................................10

CAFA.....................................................................................................................................1, 10, 11

Fair Labor Standards Act..............................................................................................................*passim*

2010 N.Y. LAWS 564 ......................................................................................................................23

NYLL §§ 191 and 198 ...........................................................3, 18, 16, 23, 12, 13, 14, 15, 17, 22, 23

NYLL § 193................................................................................................................................3, 24, 25

NYLL § 195................................................................................................................................13, 22

NYLL § 196................................................................................................................................23

NYLL §§ 197, 218 and 219..........................................................................................................23, 24

NYLL Title 6 .............................................................................................................................13, 22

**Other Authorities**

29 C.F.R. § 778.106.......................................................................................................................5, 7

Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) ..............................................................1, 3

U.S. Dep't of Labor Wage and Hour Opinion Letter No. 63 (Nov. 30, 1961)................................6

U.S. Dep't of Labor Wage and Hour Opinion Letter No. 1296 (Nov. 27, 1973) ...........................6

U.S. Dep't of Labor Wage and Hour Opinion Letter No. 116 (Aug. 2, 1962)................................6

Defendant Open Door NY Home Care Services, Inc. ("Open Door") respectfully submits this memorandum of law in support of its motion to dismiss Plaintiff Mala Sharma's Collective & Class Action Complaint (the "Complaint," Doc. 1), pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

## I.   PRELIMINARY STATEMENT

This is a frequency of pay action brought by Ms. Sharma on behalf of herself and her purported colleagues. She complains that although she and her fellow "home attendants, personal care aides and/or home health aides" were paid all wages due them, they are entitled to recoup *half of those wages again* as liquidated damages because they were supposedly "manual workers" who should have been paid on a weekly, not bi-weekly, basis (Doc. 1, ¶ 1).

The problems with Ms. Sharma's Complaint are many. To begin with, she contends this Court has subject matter jurisdiction because she believes that Open Door's regular practice of paying her on a bi-weekly basis violates not only New York Labor Law ("NYLL") § 191, but also the Fair Labor Standards Act ("FLSA"). But Ms. Sharma is wrong. There is simply no requirement within the FLSA, or its regulations, that requires employers to pay wages on a weekly basis. Nor is there anything inappropriate about Open Door's regular payment date, which Ms. Sharma alleges occurs "nine (9) days after the end of each bi-weekly pay period" (Doc. 1, ¶ 27). Because Ms. Sharma cannot state a colorable FLSA claim, she cannot claim federal question jurisdiction in this case. And there is no other basis upon which Ms. Sharma can claim jurisdiction, as both she and Open Door are New York citizens, and her putative FLSA collective and proposed NYLL class are comprised of New York workers, thereby belying any notion that traditional or CAFA diversity jurisdiction may exist. Put simply, Ms. Sharma cannot bring her claims before this Court by asserting an FLSA claim that does not exist.

And without a viable FLSA or other federal claim, the Court should decline to exercise supplemental jurisdiction over Ms. Sharma's remaining NYLL claims and dismiss them without prejudice. *See Altamura v. Reliance Commc'ns*, No. 16-cv-1964, 2023 WL 5843720, at \*1 (E.D.N.Y. Sept. 11, 2023) (adopting report & recommendation "dismissing Plaintiff's FLSA claims and declining to exercise supplemental jurisdiction over Plaintiff's remaining [NYLL] claims.").

Alternatively, the Court should dismiss Ms. Sharma's NYLL claims with prejudice. As the Second Department recently held, neither NYLL § 191 nor § 198 provide an express or implied private cause of action to "a manual worker [who wa]s paid all of his or wages biweekly, rather than weekly." *Grant v. Global Aircraft Dispatch*, 204 N.Y.S.3d 117, 125 (N.Y. App. Div. 2d Dep't Jan. 17, 2024), *motion for reargument or appeal filed* Feb. 15, 2024. Although the Second Department's *Grant* decision conflicts with the First Department's 2019 decision in *Vega v. CM & Associates Construction Management*, 107 N.Y.S.3d 286 (N.Y. App. Div. 1st Dep't 2019), the Court should adopt and follow *Grant* because the *Grant* decision better conforms with the plain language and legislative history of NYLL §§ 191 and 198, is more consistent with general principles of statutory construction than *Vega*, and addresses New York Court of Appeals decisions issued only after *Vega* was released. *See Galante v. Watermark Servs. IV*, No. 23-cv-6227, 2024 WL 989704, at \*6, 8 (W.D.N.Y. Mar. 7, 2024) (concluding in light of statutory language and legislative history, "*Grant* better represents how the New York Court of Appeals would decide the issue," and therefore, in light of *Grant*, NYLL §§ 191 and 198 do "not provide a private right of action, either expressed or implied.").

And *Grant* makes clear that Ms. Sharma cannot state claims for liquidated damages, pre- and post-judgment interest, and attorneys' fees simply for being paid fully on a biweekly, as

opposed to a weekly, basis. Ms. Sharma also cannot plausibly contend that her receipt of full wages on a biweekly basis violates NYLL § 193(5), as this Court recently explained that provision applies only to wage deductions, and not to the "wholesale withholding of wages" such as Ms. Sharma alleges occurred here. *Boutsikakis v. Tri-Borough Home Care*, No. 15-cv-5833, 2023 WL 3620646, at *5 (E.D.N.Y. Apr. 11, 2023). And, in any event, any such claim becomes moot based upon Ms. Sharma's own allegations before she ever filed this lawsuit.

## II.    STATEMENT OF RELEVANT FACTS

Ms. Sharma alleges that she was employed by Open Door as a home attendant in May 2019 (Doc. 1, ¶ 16). Her last date of work with Open Door was November 17, 2023. *See* Declaration of Boris Cherkalin, dated March 18, 2024 ("Cherkalin Decl."), at ¶ 5.[1] Ms. Sharma does not claim that she was denied any wages, or that she was paid incorrect wages. She also does not claim that she was paid irregularly or after any of Open Door's established pay dates. Instead, Ms. Sharma alleges that she was a "manual worker" within the meaning of NYLL § 191(1)(a)(i), and therefore she should have been paid on a weekly, not bi-weekly, basis (*Id.*, ¶¶ 18, 31). She contends that Open Door's failure to do so violates both the FLSA and the NYLL (*Id.*, ¶¶ 46-61 (FLSA claims), ¶¶ 62-73 (NYLL claims)). In other words, even though she concedes that she was regularly and consistently paid in full for all her hours worked and in accordance with Open Door's regular pay

---

[1] "In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court . . . may refer to evidence outside the pleadings." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000); *accord United States ex rel Coyne v. Amgen*, 229 F. Supp. 3d 159, 162 (E.D.N.Y. 2017) ("While facts to consider in the context of a Rule 12 motion to dismiss are generally limited to those set forth in the pleadings, a court may consider matters outside the pleadings when determining, for purposes of a Rule 12(b)(1) motion, whether subject matter jurisdiction exists."), *report adopted*, 243 F. Supp. 3d 295 (E.D.N.Y. 2017), *aff'd*, 717 F. App'x 26 (2d Cir. 2017).

3

schedule, Ms. Sharma alleges that she is entitled to recover liquidated damages of up to half of her full pay over the last six years simply because Open Door paid her on a biweekly basis.

Ms. Sharma brings her claims not only on her own behalf, but also on behalf of a proposed FLSA collective comprised of "persons who worked for [Open Door] as home attendants, personal care aides and/or home health aides at any time since January 31, 2021," and a putative NYLL class comprised of the same persons, but who "worked . . . for [Open Door] at any time since January 23, 2018" (Doc. 1, ¶¶ 35, 37).

## III.    LEGAL ARGUMENT

### A.    Plaintiff's FLSA Claims Fail As A Matter Of Law

Ms. Sharma's first two causes of action allege a violation of the FLSA's "prompt payment" requirement based upon NYLL's frequency of pay provisions (Doc. 1, ¶¶ 46-61). These counts should be dismissed, with prejudice, because Ms. Sharma is attempting to re-write the FLSA, and the case law thereunder, to create causes of action (and garner accompanying federal question jurisdiction) where none exist. Simply stated, the FLSA does not prohibit employers from paying employees on a regular biweekly basis, and Ms. Sharma concedes that she was fully paid on such a basis (*Id.*, ¶¶ 27, 29-30). Her FLSA "prompt payment" claims are due to be dismissed.

#### 1.    The FLSA's "Prompt Payment" Requirement Obligates Employers To Pay Wages On Its Own Regularly Established Pay Dates

While the FLSA requires employers to pay certain employees minimum wages and/or overtime, "[t]he Act does not specify *when* th[ose] wage[s] must be paid." *Rogers v. City of Troy*, 148 F.3d 52, 55 (2d Cir. 1998) (emphasis in original). Nevertheless, the United States Supreme Court has interpreted the FLSA to require "on time" payment. *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697, 707 (1945); *accord United States v. Kinghoffer Bros. Realty Corp.*, 285 F.2d 487,

491 (2d Cir. 1960) ("While the FLSA does not expressly set forth a requirement of prompt payment, such a requirement is clearly established by the authorities").

The FLSA's "prompt payment" requirement, however, does not set a specific frequency for payment, or specify the number of workweeks each pay period must cover. Instead, federal courts—including New York's courts—have concluded that the FLSA's "prompt payment" requirement simply requires employers pay their "workers *on their regular paydays*." *Martin v. United States*, 117 Fed. Cl. 611, 618 (2014) (emphasis added, collecting cases); *see also Rigopoulus v. Kervan*, 140 F.2d 506, 507 (2d Cir. 1943) (FLSA prohibits employers from deferring wage payments "beyond [its] regular payday"); *Adams v. City of New York*, No. 16-cv-3445, 2021 1791182, at *8 (S.D.N.Y. May 2, 2021) (same); *Inclan v. New York Hospitality Group*, 95 F. Supp. 3d 490, 499-500 (S.D.N.Y. 2015) (FLSA's prompt payment requirement is measured "by reference to objective standards," and requires employers to pay all wages due "on the regular pay day for the period in which such workweek ends") (quoting *Conzo v. City of New York*, 667 F. Supp. 2d 279, 288 (S.D.N.Y. 2009); *Mendez v. U.S. Nonwovens Corp.*, 2 F. Supp. 3d 442, 452-53 (E.D.N.Y. 2014) (same). *Accord* 29 C.F.R. § 778.106 (an employee's wages "must be paid on the regular pay day for the period in which such workweek ends.").

In other words, the FLSA's "implicit timely payment obligation" simply requires employers to pay wages based upon its own regularly established paydays and pay cycles. *Avalos v. United States*, 54 F.4th 1343, 1349 (Fed. Cir. 2022), *cert. denied sub nom. Martin v. United States*, 144 S. Ct. 557 (2024). Beyond that, the FLSA imposes no requirements on employers concerning the frequency of those paydays, or the number of workweeks they cover. *Marshall v. Allen-Russell Ford*, 488 F. Supp. 615, 618 (E.D. Tenn. 1980) ("[T]here is nothing in the law that

says a pay period has to be one week only or that employees must be paid weekly. A pay period can be one week, two weeks, or a month.").

Terms regarding the frequency of pay periods, and the number of workweeks they cover, are left by the FLSA to the discretion of the parties. *Luther v. Z Wilson, Inc.*, 528 F. Supp. 1166, 1174 (S.D. Ohio 1981) (noting that employers and employees are "free to contract for any regular pay period" under the FLSA, and "the relevant pay period" for purposes of a timely payment analysis "is determined from the actual pattern of payments adopted by the parties"); *accord* U.S. Dep't of Labor Wage and Hour Opinion Letters No. 1296 (Nov. 27, 1973) and No. 116 (Aug. 2, 1962).[2] The United States Department of Labor has confirmed not only the legality of such various payment schedules, but that employers and employees are free to contract for any regular pay period, so long as the wages paid for that period comply with the FLSA's minimum wage and overtime requirements. *See* U.S. Dep't of Labor Wage and Hour Opinion Letter No. 63 (Nov. 30, 1961).[3] And for this reason, an FLSA cause of action arises only if and when an employer fails to pay an employee on the employer's *regular pay day*. 29 C.F.R. § 790.21(b).

### 2.    Open Door's Pay Practices Comply With The FLSA's "Prompt Payment" Standard As A Matter of Law

The fact that the FLSA does not demand weekly payment belies Ms. Sharma's claims. She does not allege that Open Door paid her irregularly, or inconsistently with its regular bi-weekly pay program or established pay dates (Doc. 1, *passim*). Instead, Ms. Sharma concedes that Open Door established a regular payment date "nine (9) days after the end of each bi-weekly pay period,"

---

[2] True and correct copies of these Opinion Letters are attached as **Exhibit 1** and **Exhibit 2** to the accompanying Declaration of Matthew R. Capobianco, Esq., dated April 4, 2024 ("Capobianco Decl.,").

[3] *See* Capobianco Decl. at **Exhibit 3** (true and correct copy of the November 30, 1961 Opinion Letter).

and regularly paid her and her colleagues in accordance with that schedule (*Id.*, ¶¶ 27, 29-30). The FLSA required nothing more from Open Door.

After all, while Ms. Sharma apparently wishes she had been paid weekly, the FLSA does not require that wages "be paid weekly." *Conzo v. City of New York*, 667 F. Supp. 2d 279, 288 (S.D.N.Y. 2009) (quoting 29 C.F.R. § 778.106). Nor can Ms. Sharma plausibly contend that a pay date set "nine (9) days after the end of each bi-weekly pay period" violates the FLSA, as this Court, joined by other courts, has repeatedly concluded that pay dates occurring within 14 days of the end of a pay period are proper and comply with the FLSA's requirements. *See, e.g.*, *Coley v. Vannguard Urban Improvement Ass'n*, No. 12-cv-5565, 2018 WL 1513628, at *13 (E.D.N.Y. Mar. 27, 2018) (noting that "Courts in this Circuit and elsewhere have held that two weeks is an unreasonable amount of time for an employer to delay a paycheck" after the end of a pay period, and concluding that "two weeks is an appropriate standard to use in assessing whether" an employer promptly paid its employees their wages); *Wilson v. Jamaica Serv. Program for Older Adults*, No. 21-cv-1263, 2021 WL 4750098, at *3 (E.D.N.Y. Oct. 12, 2021) (same). *Accord Arroyave v. Rossi*, 296 F. App'x 835, 837 (11th Cir. 2008) (noting the FLSA does not require employers to pay wages "at the end of the pay period," and concluding there is nothing "unreasonable" about "a ten-day delay between the end of the pay period and payday").

Put simply, an FLSA claim accrues only where an employer fails to make a wage payment by its own regularly established pay day. *Nakahata v. New York Presbyterian Healthcare Sys.*, 723 F.3d 192, 198 (2d Cir. 2013) (citing 29 C.F.R. § 790.12(b)). Because Open Door's use of a regular biweekly pay program is permitted by the FLSA, and its use of a pay day set nine (9) days after the close of a pay period is presumptively proper, and because Ms. Sharma concedes Open Door

regularly paid her in accordance with Open Door's own regular pay schedule, Ms. Sharma's FLSA "prompt payment" claims must be dismissed.

### 3. Ms. Sharma Cannot Base Her FLSA "Prompt Payment" Claims On The NYLL's Pay Frequency Requirements

Ultimately, what Ms. Sharma is attempting to do here is to replace the FLSA's use of an employer's "regular payday" standard with the pay frequency requirements of NYLL § 191. But no provision of the FLSA or the case law applying it permits such a perversion of the FLSA's established standards.

The principle is well-established that "in the absence of a plain indication to the contrary, "it is to be assumed when Congress enacts a statute that it does not intend to make its application dependent on state law." *NLRB v. Natural Gas Util. Dist. of Hawkins County*, 403 U.S. 600, 603 (1971); *accord Mississippi Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 43 (1989) ("Congress when it enacts a statute is not making the application of the federal act dependent on state law," because doing so would frustrate the intent for federal law "to have uniform nationwide application.") (quoting *Jerome v. United States*, 318 U.S. 101, 104 (1943)). And this is particularly true with respect to the FLSA because, in passing the FSLA, Congress expressed an intent "to achieve a uniform national policy of guaranteeing compensation for all work or employment engaged in by employees governed by the Act." *Barrentine v. Arkansas-Best Freight Sys.*, 450 U.S. 728, 741 (1981) (quoting *Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 602-03 (1944)). As such, the FLSA's "prompt payment" requirement cannot be construed through reference to varying state frequency-of-pay laws. *Holyfield*, 490 U.S. at 43-44 ("[C]ases in which we have found that Congress intended a state-law definition of a statutory term have often been those where uniformity clearly was not intended.").

8

In fact, New York's federal courts have rejected similar efforts to import "the New York Labor Law standard for the timing of wage payments into the federal Fair Labor Standards Act," as doing so "would run counter to the Act's goal of establishing a uniform national standard." *See* Capobianco Decl. at **Exhibit 4** (Order, *Breland v. Zakarian*, No. 08-cv-6120 (S.D.N.Y. filed June 30, 2009) (Kaplan, J.)). Courts of other states have done the same. *See Girolamo v. Cmty. Physical Therapy & Assocs.*, No. 15-cv-2361, 2016 WL 2909649, at *4-5 (N.D. Ill. May 19, 2016) (rejecting plaintiff's argument that the Illinois Wage Payment and Collection Act's pay timing requirements set the standard by which to measure an employer's compliance with the FLSA's prompt payment requirements); *Basinger v. Wal-Mart Stores*, No. 98-cv-334, 1999 WL 33117106, at *2-5 (D. Me. Jan. 27, 1999) (refusing plaintiff's attempt to peg enforcement of the FLSA's "prompt payment" requirement to Maine's statutory weekly pay requirement because doing so would undermine the FLSA's goal of establishing uniform national standards regarding wage payments); *In re Wage Payment Litig.*, 759 A.2d 217, 225 (Me. 2000) (adopting and applying *Basinger* in affirming the dismissal of similar efforts in four other consolidated cases to use Maine's weekly payment statute to create a FLSA "prompt payment" cause of action). In fact, the Second Circuit has taken this a step further, rejecting efforts to use the terms of a collective bargaining agreement as a substitute for an employer's regular payment practices, because doing so would similarly undermine the FLSA's goal of establishing "a uniform national policy in terms of wages and hours." *Rogers*, 148 F.3d at 57.

In sum, Ms. Sharma cannot look to NYLL § 191 to create an FLSA "prompt payment" cause of action. Because the pay frequency laws of the states vary, doing so would undermine and frustrate the FLSA's own objective of establishing a uniform, national "prompt pay" standard. What the FLSA requires is that employers pay their employees "on time," in accordance with their

9

own regularly establish pay dates and pay cycles, *Brooklyn Savings*, 324 U.S. at 707, and that is what Ms. Sharma concedes Open Door did here. The FLSA required nothing more of Open Door. Ms. Sharma cannot use NYLL § 191 to interpret the FLSA in a manner that would create a federal remedy (and federal jurisdiction) for violation of NYLL § 191. Ms. Sharma's FLSA claims should be dismissed.

**B.    The Court Should Dismiss Ms. Sharma's Remaining Claims For Lack of Subject Matter Jurisdiction**

Because Ms. Sharma's only federal claims are her FLSA "prompt payment" claims, and because those claims are not viable, the Court lacks subject matter jurisdiction over this matter. After all, the *sole* jurisdictional basis claimed by Ms. Sharma is federal question jurisdiction (Doc. 1, ¶ 6). But without a viable FLSA claim, federal question jurisdiction does not exist here, and the Court should, as a result, dismiss her lawsuit in its entirety.

And to be clear, Ms. Sharma cannot plausibly claim in after-the-fact fashion that the Court has subject matter jurisdiction under traditional or CAFA diversity principles. Ms. Sharma concedes that both she and Open Door are New York citizens (Doc. 1, ¶¶ 9, 12), which precludes traditional diversity jurisdiction. *See Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005) (diversity jurisdiction "require[s] complete diversity between all plaintiffs and all defendants"). And because both her putative FLSA collective and her proposed NYLL class are comprised of Open Door's New York home attendants (*Id.*, ¶¶ 35, 37), CAFA jurisdiction is unavailable pursuant to its "local controversy" and "home state controversy" exceptions. *See* 28 U.S.C. §§ 1332(d)(2)(A), 1332(d)(4)(B).[4] *Accord Mattera v. Clear Channel Commc'ns*, 239 F.R.D. 70, 80 (S.D.N.Y. 2006)

---

[4] Given that Open Door is a domestic corporation supplying senior care services only in the Five Boroughs, and in Nassau County, Westchester County and Suffolk County (Cherkalin Decl., ¶ 7), and given that both Ms. Sharma's proposed collective and class are comprised of Open Door's home attendants, the Court is entitled to make the reasonable, common-sense assumption that more

10

(under the "home state" and "local controversy" exceptions, court must decline to exercise CAFA jurisdiction in cases where "more than two-thirds of the putative class members are citizens of the state in which the action was originally filed").

Nor would it be appropriate for the Court to exercise supplemental jurisdiction over Ms. Sharma's remaining state law claims. Time and again, New York's federal courts have refused to exercise supplemental jurisdiction over plaintiffs' remaining NYLL claims after dismissing their FLSA claims. *Shum v. Jili Inc.*, No. No. 17-cv-7600, 2023 WL 2974902, at *17 (E.D.N.Y. Mar. 19, 2023) (collecting cases and noting that courts commonly decline to exercise "supplemental jurisdiction over state wage-and-hour claims where all of a plaintiff's FLSA claims have been dismissed").[5]

As such, Ms. Sharma's remaining NYLL claims should be dismissed without prejudice, for lack of subject matter jurisdiction. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) (where a

---

than two-thirds of the members of Ms. Sharma's proposed collective and class are New York citizens. *See, e.g.*, *Commisso v. PricewaterhouseCoopers*, No. 11-cv-5713, 2012 WL 3070217, at *5 (S.D.N.Y. July 27, 2012) (concluding that it was "reasonable to assume that" the putative class members satisfied CAFA exemption's citizenship requirement "because the class is limited to individuals in PwC's New York office"); *Cunningham v. Pret a Manager (USA)*, No. 19-cv-2322, 2020 WL 122835, at *4 (S.D.N.Y. Jan. 10, 2020) ("A court may make 'reasonable assumptions about the makeup of the putative class' when determining whether it has jurisdiction under CAFA," including by assuming that the putative class members are citizens of the state in which they "are employed"); *Mattera v. Clear Channel Commc'ns*, 239 F.R.D. 70, 80 (S.D.N.Y. 2006) (finding it "reasonably likely that more than two-thirds of the putative class members of the proposed class—all of whom work in New York—are citizens of New York.").

[5] *See also, e.g.*, *Altamura*, 2023 WL 5843720, at *1; *Yang v. Zhou's Yummy Rest.*, No. 19-cv-5203, 2023 WL 2347885, at *6 (E.D.N.Y. Mar. 3, 2023) (declining "to exercise supplemental jurisdiction over NYLL claims where there can be no relief under the FLSA"); *Singh v. Mowla*, No. 19-cv-4687, 2022 WL 17820099, at *8 (E.D.N.Y. Sept. 30, 2022) (same); *Jiao v. Shang Shang Qian Inc.*, No. 18-cv-5624, 2020 WL 5105063, at *3 (E.D.N.Y. Aug. 21, 2020) (same); *Kaplan v. Wings of Hope Residence*, No. 18-cv-2972, 2020 WL 616630, at *12 (E.D.N.Y. Feb. 7, 2020) (same); *Volpe v. Am. Language Commc'n Center*, 200 F. Supp. 3d 428, 435 (S.D.N. 2016) (refusing to exercise supplemental jurisdiction over plaintiff's NYLL claims after dismissing his FLSA claims), *aff'd*, 692 F. App'x 51 (2d Cir. 2017).

court concludes that it lacks jurisdiction over the remaining claims in a case, those claims "must be dismissed in [their] entirety").

### C.   Alternatively, The Court Should Dismiss Ms. Sharma's Remaining NYLL Claims

#### 1.   The Court Should Dismiss Ms. Sharma's NYLL § 191 Claim

##### a.   NYLL §191 Does Not Afford A Private Right of Action For Untimely Paid Full Wages

Undeniably, this Court has previously concluded—most recently, on November 7, 2023—that NYLL § 191 affords a private right of action to "manual workers" who are paid on a bi-weekly basis. *See, e.g.*, *Gutierrez v. Carter's Inc.*, No. 22-cv-3234, 2023 WL 7337184, at *3-4 (E.D.N.Y. Nov. 7, 2023). In doing so, the Court explained that it was "obligated to follow" the First Department's decision in *Vega v. CM & Associates Construction Management, LLC*, 107 N.Y.S.3d 286 (1st Dep't 2019), which at the time was the only state law decision of a state intermediate appellate court to address the availability of a private right of action for "manual workers" paid on a bi-weekly basis. *Gutierrez*, 2023 WL 7337184, at *3.

That notion has now completely changed. On January 17, 2024, the Second Department issued its decision in *Grant v. Global Aircraft Dispatch, Inc.*, 204 N.Y.S.3d 117 (2d Dep't Jan. 17, 2024), wherein the court rejected "the reasoning of *Vega* and decline[d] to follow it." *Id.* at 122. Recognizing that NYLL § 191 can only be enforced through NYLL § 198, the Second Department:

- Concluded that "neither the language nor the legislative history of Labor Law § 198 supports the plaintiff's contention that this statute expressly provides a private right of action to recover liquidated damages, prejudgment interest and attorneys' fees for a violation of Labor Law § 191(1)(a) where, as here, the employer pays wages pursuant to a regular biweekly pay schedule;"

- Found that "[t]he plain language of Labor Law § 198(1-a) supports the conclusion that this statute is addressed to nonpayment and underpayment of wages, as distinct from the frequency of payment," thereby belying the notion that "payment of full wages on the regular biweekly payday constitutes nonpayment or underpayment;" and

- Concluded that because "multiple official enforcement mechanisms for violations of Labor Law § 191" exist, "under *Konkur* [*v. Utica Academy of Science Charter School*, 38 N.Y.3d 38 (2022)], a private right of action cannot be implied" under NYLL §§ 191 or 198.

*Grant*, 204 N.Y.S.3d at 121-22, 125. As such, the Second Department held that NYLL § 198 does not "provide for a private right of action to recover liquidated damages, prejudgment interest, and attorneys' fees where a manual worker is paid all of his or her wages biweekly, rather than weekly, in violation of Labor Law § 191(1)(a)." *Id.* at *5.

Because of such profound disagreement between the First and Second Departments, "this Court must [now] choose . . . between [these] directly conflicting" holdings, *Kuwait Airways Corp. v. Ogden Allied Aviation Servs.*, 726 F. Supp. 1389, 1394-95 (E.D.N.Y. 1989), in "carefully . . . predict[ing] how" the New York Court of Appeals might resolve the issue. *Chen v. Dunkin' Brands*, 954 F.3d 492, 499 (2d Cir. 2020).

**b.** **NYLL §§ 191 and 198 Do Not Expressly Provide for a Private Right of Action for Untimely Paid Full Wages**

Section 191 is codified within Title 6 of the NYLL, which vests the Commissioner of the Department of Labor with exclusive responsibility for its enforcement *except in two limited and expressly enumerated circumstances:*

1. NYLL §§ 198(1-b) and 198(1-d) provide that an employee may "recover in a civil action" statutory damages for her employer's failure to provide her with proper wage statements and wage notices as required by NYLL § 195. This exception is not relevant here, as Ms. Sharma does not complain about the wage statements and notices she received (Doc. 1 *passim*); and

2. NYLL § 198(1-a) provides that an employee may sue to "recover the full amount of any *[wage] underpayment*," along with reasonable attorney's fees, interest and "liquidated damages equal to one hundred percent of" that underpayment (emphasis added).

Thus, the availability of an express cause of action here turns on whether paying a "manual worker" on a bi-weekly basis constitutes an "underpayment," as Ms. Sharma does not allege that she was ultimately deprived of any wages due her.

In *Vega*, the First Department concluded that the term "underpayment" includes not only instances of nonpayment or partial payment, but also the late payment of wages because "[t]he moment an employer fails to pay wages in compliance with section 191(1)(a), the employer pays less than what is required." 107 N.Y.S.3d at 288. But even before the release of *Grant*, several of New York's federal courts questioned that reasoning. For example,

- In *Pozo v. BlueMercury, Inc.*, No. 22-cv-7382, 2023 WL 4980217 (S.D.N.Y. Aug. 3, 2023), Judge Caproni noted that "[i]f the Court were writing on a clean slate, it might agree with Defendant" that *Vega* was wrongly decided. *Pozo,* 2023 WL 4980217, at *4;

- In *Espinal v. Sephora USA, Inc.*, No. 22-cv-3034, 2022 WL 16973328 (S.D.N.Y. Nov. 16, 2022), Magistrate Gorenstein explained that "we would likely not reach this conclusion ourselves" as "[t]he term 'underpayment' in common usage does not easily embrace the notion of a late payment of a properly paid wage," particularly where a "complaint is devoid of any allegation that there was a single period of work that was not ultimately compensated." *Espinal,* 2022 WL 16973328, at *5-6;

- In *Harris v. Old Navy, LLC*, No. 21-cv-9946, 2022 WL 16941712 (S.D.N.Y. Nov. 15, 2022), Magistrate Gorenstein expressed "doubt that a worker who was fully paid her wages, even if late, may later claim to have received an 'underpayment' of those wages." *Harris,* 2022 WL 16941712, at *6;

- In *Accosta v. Lorelei Events Group, Inc.*, No. 17-cv-7804, 2022 WL 195514 (S.D.N.Y. Jan. 21, 2022), Judge Román noted that while the FLSA includes a prompt payment requirement, "the NYLL does not appear to provide a similar remedy," as NYLL § 198's "liquidated damages provision is geared to afford relief for unpaid wages, not for late-paid wages." *Accosta,* 2022 WL 195514, at *4; and

- In *Quintanilla v. Kabo Pharmaceuticals, Inc.*, Judge Chen noted that she found "the reasoning in *Vega* a little bit—it's going to sound too harsh—a little tortured." Hearing Transcript at 17, *Quintanillia v. Kabo Pharm.*, No. 19-cv-6752 (E.D.N.Y. June 30, 2020) (CM/ECF Doc. 27, entered Nov. 9, 2020).[6]

---

[6] *See* Capobianco Decl. at **Exhibit 5** (true and correct copy of the *Quintanilla* Hearing Transcript).

14

Nevertheless, those courts applied *Vega*, as this Court did in *Gutierrez*, because no contrary

intermediate state court decision existed at the time. *Compare Id.* at 17; *Pozo*, 2023 WL 4980217,

at *4-5; *Espinal*, 2022 WL 16973328, at *6 and *Harris*, 2022 WL 16941712, at *7 *with Gutierrez*,

2023 WL 7337184, at *3.

In its recent *Grant* decision, the Second Department agreed with the concerns raised in

*Pozo*, *Espinal*, *Harris*, *Accosta* and *Quintanilla* and rejected the "reasoning of *Vega*." *Grant*, 204

N.Y.S.3d at 122. According to the Second Department, the "plain language of Labor Law § 198(1-

a) supports the conclusion that this statute is addressed to nonpayment and underpayment of wages,

as distinct from the frequency of payment," such that the "payment of full wages on the regular

biweekly payday" does not constitute a "nonpayment or underpayment" within the meaning of the

NYLL. *Id.* As the Second Department explained:

> The First Department's reasoning that the "moment an employer fails to pay wages
> in compliance with section 191(1)(a), the employer pays less than what is required"
> [*Vega*, 175 A.D.3d at 1145], seems to be based upon the premise that a payment
> was due after the first week of the biweekly pay period and that the employer
> therefore failed to pay the wages due after that first week. ***However, where an
> employer uses a regular biweekly pay schedule, that employer's payment of wages
> is due, under the employment agreement between the employer and an employee,
> every two weeks. Such an agreed-upon pay schedule between an employer and a
> manual worker violates the frequency of payments requirement (see Labor Law
> § 191[2]), but is not equivalent, in our view, with a nonpayment or underpayment
> of wages subject to collection with an additional assessment of liquidated
> damages.*** The employer's payment of full wages on the regular payday is crucial
> and distinguishes this case from federal cases under the Fair Labor Standards Act
> in which courts have concluded that employers were liable for liquidated damages
> for violating the prompt payment requirement implied in that law by, for example,
> paying overtime compensation two years after it was earned, or failing to pay on
> the regular payday.

*Id.* at 122-23 (emphasis added). Judge Geraci of the Western District of New York recently agreed

with the Second Department's reasoning, concluding that the "usual and commonly understood

meaning[]" of the term "underpayment" refers "to situations in which an employee has not

received the amount of wages she is entitled to, rather than situations in which she received them one week late." *Galante*, 2024 WL 989704, at *8. Therefore, Judge Geraci reasoned, Section 198 "is better understood, then, as providing a remedy for violations of statutes governing *how much* an employer must pay an[] employee, not *how frequently* the employer must do so." *Id.* (emphasis in original). Such reasoning by the Second Department and Judge Geraci not only makes sense, but better complies—unlike *Vega*—with the principle of statutory construction that the parts of a statute should be read and applied consistently. *See National Credit Union Admin. v. First Nat'l Bank & Trust Co.*, 522 U.S. 479, 501 (1998); *U.S. v. Cunningham*, 292 F.3d 115, 118 (2d Cir. 2002). After all, other provisions of NYLL § 191 make clear that the date an employee's wages *are due* is determined not by the statute itself but "in accordance with the agreed terms of employment," NYLL §§ 191(1)(c), 191(1)(d), and the employer's "regular pay day." *Id.* at § 191(3) (final wages payable "not later than the regular pay day for the pay period during which the termination occurred). *But compare Garcia v. Skechers USA Retail*, No. 23-cv-1055, 2024 WL 1142316, at *6 (E.D.N.Y. Mar. 15, 2024) (Chen, J.) (reaffirming *Vega* because, in the court's view, "the absence of language in Section 198 addressing late payments is irrelevant" to the question of whether a late payment is an "underpayment") *with Urena v. Sonder USA*, No. 22-cv-7736, 2024 WL 989593, at *3-4 (S.D.N.Y. Mar. 7, 2024) (Marrero, J.) (ordering party briefing on whether action should be stayed pending resolution for motion for reargument or appeal in *Grant*).

The Second Department's *Grant* decision is not only better reasoned and consistent with established principles of statutory construction but is also based on a more thorough analysis of the legislative history surrounding NYLL § 198. While the First Department passingly referenced the 1967 amendments to NYLL § 198 in a footnote to its *Vega* decision (*Vega*, 175 A.D.3d at 1146, n.2), it did not expressly address the 2009 and 2010 amendments to § 198. In *Grant*, the

Second Department did, along with the 1967 amendment, and concluded that the totality of the "legislative history reveals that Labor Law § 198(1-a) was aimed at remedying employers' failure to pay the amount of wages required by contract or law," and "nothing" within that history "suggest[s] that the statute was meant to address circumstances in which an employer pays full wages pursuant to an agreed-upon, biweekly pay schedule that nevertheless does not conform to the frequency of payments provision of law." *Grant*, 204 N.Y.S.3d at 125.

In his *Galante* decision, Judge Geraci took that a step further, explaining that the later 2015 amendments to NYLL § 198 further confirmed the Second Department's analysis that § 198's remedies provisions were not intended to address timing-of-payment issues. *Galante*, 2024 WL 989704, at *9. And as the Southern District has explained, when faced with conflicting state intermediate court decisions, the court should adopt the position which "better conforms with the plain language and legislative intent . . . and appears more consistent with general principles of statutory construction"—factors here which weigh in favor of adoption of the reasoning and holdings of the Second Department's *Grant* decision. *NAP v. Shuttletex*, 112 F. Supp. 2d 369, 378 (S.D.N.Y. 2000).

Moreover, adopting *Grant*'s reasoning ensures better historical consistency in the interpretation of NYLL §§ 191's and 198's remedies. Prior to *Vega*, New York's federal and state courts commonly concluded that employees could not assert private actions to enforce NYLL § 191's frequency-of-pay requirements if they were fully paid on some other statutory pay frequency basis. *See, e.g., Arciello v. Cnty. of Nassau*, No. 16-cv-3974, 2019 WL 4575145, at *8 (E.D.N.Y. Sept. 20, 2019) (collecting cases and noting "[c]ourts in the Southern District of New York and this District have opined that the NYLL may not contain . . . a remedy" for frequency-of-pay violations); *Gardner v. D&D Elec. Constr. Co.*, No. 160249/2018, 2019 WL 3765345, at *2 (New

17

York Cnty. Sup. Ct. Aug. 9, 2019) (a plaintiff "cannot bring an independent action to enforce the substantive provisions of" NYLL § 191 in cases where "he was paid in full prior to the commencement of the action"); *Hunter v. Planned Bldg. Servs.*, No. 715053/2017, 2018 WL 3392476, at *2 (Queens Cty. Sup. Ct. June 20, 2018) ("The Court finds based upon the statutory provisions and the interpreting case law that plaintiff has no private right of action under NYLL § 198(1-a) for a frequency of payment violation of NYLL § 191(1)(a)(i) where there is no claim for unpaid wages."); *Belizaire v. RAV Investigative & Sec. Servs.*, 61 F. Supp. 3d 336, 360, n.22 (S.D.N.Y. 2014) (noting that while the FLSA provides a cause of action for late paid wages, "the NYLL does not appear to provide a similar remedy" as it "is geared to afford relief for unpaid wages, not for late-paid wages"); *Hussain v. Pakistan Int'l Airlines Corp.*, No. 11-cv-932, 2012 WL 5289541, at *3 (E.D.N.Y. Oct. 23, 2012) ("The NYLL contains no provision for private recovery for violations of its provisions regarding frequency of payment"). The First Department's *Vega* decision, however, addressed none of those cases in reaching a contrary conclusion. The Second Department's *Grant* decision, on the other hand, promotes the goals of consistency and predictability which the law "is meant to serve" by apply a uniform rationale and approach to the enforcement of the NYLL's frequency-of-pay provisions. *Johnson v. U.S.*, 576 U.S. 591, 606 (2015); *accord State v. Donald DD*, 24 N.Y.3d 174, 187 (2014) (explaining that the law should "promote[] the evenhanded, predictable, and consistent development of legal principles, foster[] reliance on judicial decisions, and contribute[] to the actual and perceived integrity of the judicial process") (quotation omitted).

The Second Department's *Grant* decision also comports with the New York Department of Labor's own approach to the issue, which has historically differentiated between frequency-of-pay complaints, on the one hand, and wage underpayment or nonpayment complaints on the other.

For example, the Department's own Labor Standards Complaint Form does not treat a frequency-of-pay claim as an unpaid/underpaid wages claim. Instead, the Department's Complaint Form lists frequency-of-pay concerns as a form of "non-wage complaint," along with employee concerns about an employer's failure to "[p]rovide a day or rest" or "a termination notice," whereas actual wage underpayment or nonpayment claims are dealt with in an entirely different section of the Department's Complaint Form. *Compare* NY DOL's Labor Standards Complaint Form (Oct. 2023 ed.) at Part 8 *with id.* at Part 4, *available at* https://dol.ny.gov/system/files/documents/2024/11/ls223.pdf (last visited April 1, 2024). The Department's separate treatment of frequency-of-pay claims from claims of actual wage under- or non-payment has always been difficult—if not impossible—to reconcile with the First Department's conclusion in *Vega* that "the late payment of wages" are an "underpayment of wages" within the meaning of NYLL § 198, but the Department's approach readily conforms with the Second Department's conclusions in *Grant*.

Finally, the Court should also adopt the reasoning of *Grant* to avoid the lurking Due Process and Eighth Amendment concerns raised through application of *Vega*'s reasoning. It is axiomatic that courts should construe statutes like NYLL §§ 191 and 198 "to avoid constitutional problems if a viable alternative interpretation exists." *U.S. v. Awadeallah*, 349 F.3d 42, 55 (2d Cir. 2003). *Vega*'s conclusion that a private right of action exists under NYLL § 198 for claims of late-but-full wage payments has always invited cases to become mired in questions over whether such remedies comport with Due Process and the Eighth Amendment's Excessive Fines Clause, as any resulting potential liquidated damages recovery would astronomically exceed any claimed "time value of money" injuries plaintiffs might allege from being paid on a bi-weekly basis.

Recognizing these concerns, several of New York's federal courts have questioned *Vega*'s suggestion that NYLL § 198 liquidated damages can be awarded in NYLL § 191 cases where the

only claimed injury are the delayed payments themselves, and the lost time value of money associated with paying a "manual worker" on a bi-weekly basis. *See, e.g.*, *Georgiou v. Harmon Stores*, No. 22-cv-2861, 2023 WL 112805, at *6-7 (E.D.N.Y. Jan. 5, 2023); Hearing Transcript at 6-7, *Gordon v. BlueTriton Brands*, No. 22-cv-2138 (S.D.N.Y. Oct 20, 2022) (Furman, J.) (noting that NYLL § 198 "liquidated damages in the form of the unpaid wages is a 'kooky' remedy where the injury is the time value of the delayed payment and that it may raise due process issues," but deferring consideration of the issue) (attached as **Exhibit 6** to the Capobianco Decl.); Hearing Transcript at 5, *Zimmerman v. Regal Cinemas*, No. 22-cv-2851 (S.D.N.Y. Sept. 1, 2022) (Seibel, J.) (questioning how an award of liquidated damages equal to "50 percent of his . . . annual salary times six" could "comport with due process" if the only claimed resulting injury from being paid bi-weekly was the lost time value of money) (attached as **Exhibit 7** to the Capobianco Decl.); Hearing Transcript at 11-12, *Corporan v. Regeneron Pharm.*, No. 21-cv-5069 (S.D.N.Y. Jan. 24, 2022) (Seibel, J.) (describing how "a remedy equal to the amount of the delayed paycheck for each week would seem to me to be insanely out of . . . proportion" to any claimed lost time value of money injury) (attached as **Exhibit 8** to the Capobianco Decl.).

The rationale behind their concerns is simple: the Supreme Court has long held that Due Process precludes the imposition of statutory penalties in amounts that are "wholly disproportioned to the" harm claimed by a plaintiff, *St. Louis, I.M. & S. Ry. Co. v. Williams*, 241 U.S. 63, 66-67 (1919),[7] and that the Eighth Amendment's Excessive Fines Clause prohibits the imposition of

---

[7] *See also, e.g.*, *Missouri Pac. R. Co. v. Tucker*, 230 U.S. 340, 349, 351 (1913) (finding imposition of $500 statutory liquidated damages award was so "grossly out of proportion to the possible actual damages" of $3.02 in the case "that its enforcement would be nothing short of the taking of property without due process of law, ... in contravention of the 14th Amendment"); *Sw. Tel. & Tel. Co. v. Danaher*, 238 U.S. 482, 486-87, 491 (1915) (same, with respect to statutory damage award of $6,300 where actual damages were less than $10).

statutory penalties bearing no reasonable "relationship to the gravity of the offense that [the statute] is designed to punish." *U.S. v. Bajakajian*, 524 U.S. 321, 334 (1998); *accord Tyler v. Hennepin Cnty., Minn.*, 143 S. Ct. 1369, 1381-82 (2023) (Gorsuch, J., concurring) (statutory penalties, even those labeled as being "remedial" in nature, violate the Eighth Amendment "when … they bear no correlation to any damages sustained by society or to the cost of enforcing the law;" as such, "[e]conomic penalties imposed to deter willful noncompliance with the law are fines by any other name[, a]nd the Constitution has something to say about them: [t]hey cannot be excessive.") (partial quotation omitted). And such issues arise only under *Vega*'s strained interpretation of NYLL § 198 to create a private right of action for liquidated damages in the absence of any actual wage underpayments or non-payments. No such issues arise, however, when the Second Department's *Grant* decision is applied.

For example, Ms. Sharma alleges she received a paycheck on May 15, 2023 in the amount of $2,375.00, covering the biweekly period from April 23, 2023 to May 6, 2023 (Doc. 1, ¶ 29). The prime rate at the time was 8.0%. *See* Historical Prime Rate, J.P. Morgan Chase & Co., *available at* https://www.jpmorganchase.com/about/our-business/historical-prime-rate (last visited April 1, 2024). Accordingly, if half of her wages were paid late (as she alleges), any "lost time value of money" injury would be $4.16.[8] But the remedy she seeks for that pay period is liquidated damages of $1,187.50—an amount *more than two hundred and eighty-five times (x285) greater* than any "lost time value of money" injury. Such a recovery—representing liquidated damages hundreds of times higher than any "lost time value of money" injury—would be Constitutionally impermissible.

---

[8] This is calculated as ½ of biweekly pay of $2,375.00 (*i.e.*, $1,187.50), at a daily interest rate of 0.021918% (*i.e.*, 8% ÷ 365 days), for 16 days.

In sum, the Court should apply *Grant* here and conclude that NYLL § 198 does not provide a private right of action to "manual workers" who were paid on a biweekly basis. Unlike the First Department's *Vega* decision, which has been criticized by numerous courts, the Second Department's *Grant* decision is based on a plain application of NYLL § 198's terms, ensures NYLL § 191's provisions are commonly interpreted and applied, comports with the legislative history of NYLL § 198 and the Department of Labor's own approach to the issue, and avoids conjuring up unnecessary Due Process and Eighth Amendment issues.

### c.   NYLL §§ 191 and 198 Also Do Not Provide for an Implied Private Right of Action For Untimely Paid Full Wages

In *Vega*, the First Department also found that a private right of action could be implied because "plaintiff is one of the class for whose particular benefit the statute was enacted, [such that] the recognition of a private right of action would promote the legislative purpose of the statute and the creation of such a right would be consistent with the legislative scheme." *Vega*, 107 N.Y.S.3d at 288-89.

Subsequently, the New York Court of Appeals issued its decision in *Konkur v. Utica Academy of Science Charter School*, holding that private rights of action cannot be implied under Article 6 of the NYLL (of which NYLL §§ 191 and 198 are a part) because "[w]here the legislature intended for an Article 6 provision to be enforced individually, it expressly provided a private right of action" and therefore private causes of action should not be inferred under other Article 6 sections and provisions. *Konkur*, 38 N.Y.3d 38, 45 (2022). As explained by one court, in light of the Legislature's 2010 amendment of NYLL Section 198 "to add[] explicit private rights of action for certain claims . . . but not others," private rights of action cannot be inferred into § 198 of NYLL Title 6, as the Legislature "clearly knew how to" create such rights but chose not to do so except when expressly and unequivocally stated. *Chan v. Big Geyser, Inc.*, No. 17-cv-6473, 2018

WL 4168967, at *6 (S.D.N.Y. Aug. 30, 2018). Indeed, the 2010 amendment to NYLL § 198 explicitly created a private right of action for violations of NYLL §§ 195(1) and 195(3), but not for § 191. *See* 2010 N.Y. LAWS 564; NYLL § 198(1-b) and (1-d). Accordingly, and although it clearly knew how to create private rights of action, the Legislature conspicuously did not include NYLL § 191 in its express creation of new private rights of action under § 198. *Cruz v TD Bank, N.A.*, 22 N.Y.3d 61, 71 (Ct. App. 2013).

In the wake of *Konkur*, several of New York's federal courts have questioned whether the First Department's conclusion in *Vega* that a private right of action can be "implied" from NYLL §§ 191's and 198's terms remain good law. As Judge Cogan recently explained,

> I have no trouble finding that *Vega*'s alternative holding that there is an implied right of action has been abrogated by *Konkur*. *Vega* simply assumed that if a plaintiff is a member of the class that the legislature intended to protect, and private enforcement would further the purposes of the statute – the first two requirements for implying a private right of action – it follows *a fortiori* that private enforcement would not be inconsistent with the statute. As *Konkur* shows, however, that assumption is wrong. *Konkur* made it clear that where the Legislature has already provided an enforcement mechanism, there is a strong likelihood that judicial creation of an additional remedy (private enforcement) may be inconsistent with the Legislature's intent.

*Georgiou v. Harmon Stores*, No. 22-cv-2861, 2023 WL 112805, at *4 (E.D.N.Y. Jan. 5, 2023) (Cogan, J.). And such criticism makes sense, as NYLL § 191 contemplates that the Labor Commissioner would police suspected violations of its frequency-of-payment provisions, *see* NYLL §§ 191(a)(i)-(ii), and NYLL § 196 expands on the powers of the Commissioner to enforce the terms of § 191 by, among other things, affording the Commissioner with the power to investigate alleged frequency-of-pay violations, to sue employers on frequency-of-pay claims that employees assign to the Commissioner, and to demand a bond from employers found to have violated § 191's provisions. *See* NYLL § 196 *passim*. In addition, NYLL § 196-a establishes a procedure for aggrieved employees to file complaints with the Labor Commissioner for

investigation, including over late wage payments. And NYLL §§ 197, 218 and 219 establish civil penalties for violations of § 191, which can only be recovered by the Commissioner. *See* NYLL §§ 197, 218-219 *passim*.

In *Grant*, the Second Department agreed with such concerns, and held that because such "multiple official enforcement mechanisms for violations of Labor Law § 191 are similarly provided, . . . under *Konkur*, a private right of action cannot be implied" under NYLL §§ 191 and 198. *Grant*, 204 N.Y.S.3d at 125. And because *Grant* is the only state intermediate appellate court decision to address the availability of an implied right of action under NYLL §§ 191 and 198 in the wake of *Konkur* (as *Vega* did not, as it predated *Konkur*), this court is "bound to apply" *Grant* "unless there is persuasive evidence that the state's highest court would reach a different conclusion." *V.S. v. Muhammad*, 595 F.3d 426, 32 (2d Cir. 2010). Therefore, no implied private right of action can be recognized under NYLL § 191 or § 198.

Because the Second Department has made clear that § 198 "does not expressly provide for a private right of action to recover liquidated damages, prejudgment interest, and attorneys' fee where a manual worker is paid all of his or her wages biweekly," and because "a private right of action cannot be implied" under the terms of NYLL § 191 or § 198, the Court should dismiss Ms. Sharma's NYLL § 191 claims under Rule 12(b)(6) for failure to state a claim upon which relief may be granted. *Grant*, 204 N.Y.S.3d at 125.

### 2.    The Court Should Also Dismiss Ms. Sharma's NYLL § 193(5) Claim

Ms. Sharma alternatively contends that Open Door's failure to pay her on a weekly basis violates NYLL § 193 (Doc. 1, ¶¶ 66, 71), which was amended in August 2021 to provide that "[t]here is no exception to liability under this section for the unauthorized failure to pay wages, benefits or wage supplements." NYLL § 193(5).

But as previously explained, Ms. Sharma cannot plausibly contend that her receipt of full wages on a biweekly basis violates NYLL § 193(5), as this Court recently explained that provision applies only to wage deductions, and not to the "wholesale withholding of wages." *Boutsikakis*, 2023 WL 3620646, at *5.

And even assuming *arguendo* that Ms. Sharma could otherwise state a claim under NYLL § 193(5), any such claim would be subject to dismissal under the mootness doctrine. It is beyond cavil that "moot questions require no answer," *Missouri, Kansas & Texas R. Co. v. Ferris*, 300 U.S. 227, 240-41 (1900), and that "[m]ootness is a jurisdictional question because the Court 'is not empowered to decide moot questions or abstract propositions.'" *North Carolina v. Rice*, 404 U.S. 244, 246 (1971) (quoting *United States v. Alaska S.S. Co.*, 253 U.S. 113, 116 (1920)). Here, Ms. Sharma complains about the frequency of her pay, not whether she was ultimately paid in full (Doc. 1 *passim*; *accord* Doc. 13 (Ms. Sharma's pre-motion conference request opposition)). Given that Ms. Sharma's last date of work was in November 2023, any NYLL § 193(5) claim she may have had about the timing of her wage past wages payments is now moot. *Beshty v. General Motors*, 327 F. Supp. 2d 208, 223 (W.D.N.Y. 2004) (dismissing plaintiff's NYLL § 193 claim for final wages because "the claim had already become moot" due to the defendant's payment of those wages prior to suit), *aff'd*, 144 F. App'x 196 (2d Cir. 2005). Her NYLL § 193 claims are also due to be dismissed.

## IV.   CONCLUSION

For the reasons set forth herein, Open Door respectfully requests that the Court (i) dismiss Ms. Sharma's FLSA claims with prejudice and decline to exercise supplemental jurisdiction over her remaining NYLL claims or, alternatively, (ii) dismiss both Ms. Sharma's FLSA and NYLL claims with prejudice.

Dated:  April 4, 2024
       Melville, New York

By:   _____

Matthew R. Capobianco
Joseph A. Gusmano
LITTLER MENDELSON, P.C.
290 Broadhollow Road, Suite 305
Melville, New York 11747
631.247.4700
mcapobianco@littler.com
jgusmano@littler.com

*Attorneys for Defendant*

4868-2770-2189.7 / 121351-1003